Kermit Sanders, Plaintiff-Appellant, v. Dr. Jack Frost and Dr. Harold Snow, Defendants-Appellees.

Gen. No. 68–65.

Fifth District.

August 26, 1969.

Delmer R. Mitchell, Jr., Meyer and Meyer, of Belleville, for appellant.

George C. Lackey, Murray & Stephens, and James B. Wham, Wham & Wham, of Centralia, for appellees.

MORAN, J.

Plaintiff, Kermit Sanders, brought this action in the Circuit Court of Marion County on April 23, 1964 to recover damages occasioned by the alleged negligence of the defendants Dr. Jack Frost and Dr. Harold Snow, in treating him for injuries he sustained in an automobile accident. The trial court granted both defendants' motions for summary judgment. Plaintiff appeals.

At the time the trial court ruled on the motions for summary judgment, it had before it the deposition of the plaintiff, the defendants Dr. Frost and Dr. Snow and the deposition of a Dr. Jean Modert.

The depositions disclosed that on July 15, 1963, plaintiff suffered serious injuries to various parts of his body, including the pelvic area when he was struck by an automobile. At that time he was taken to the hospital where he was placed under the immediate care of his family doctor, Dr. Jack Frost. The radiologic examination of the pelvis, including both hips, revealed a wide separation of the symphysis pubis. Plaintiff was then placed in a pelvic sling and told to stay in the sling. A repeat X ray of the pelvis was done on August 14, 1963, and revealed that there had been no improvement in the separation. On August 19, 1963, Dr. Frost assisted by Dr. Snow, performed an operation whereby he wired the symphysis pubis in an effort to close the separation. Plaintiff was discharged from the hospital on August 23, 1963. Dr. Frost claims that he discharged plaintiff only because of plaintiff's insistence to return home. Plaintiff denies this.

Prior to his accident, in November of 1962, plaintiff had been under the care of Dr. Frost for a staphylococcus infection in his throat. He claims that his throat was still bothering him at the time of the accident and that Dr. Frost failed to make any tests to determine if the staphylococcus infection was still present. Dr. Frost maintains that the hospital examination of plaintiff revealed no evidence of infection anywhere in his body, including his throat.

Following his operation, plaintiff claims that he developed a "boil" on his stomach which he called to the attention of Dr. Frost and inquired whether this could be staphylococcus infection. He alleges the doctor stated that it might be, but that no tests were made nor was any treatment prescribed. Dr. Frost denied having said this and denied he ever saw a boil on any part of plaintiff's stomach. He does admit that plaintiff had a slight amount of drainage from the super pubic incision when he made a house call on September 6, 1963.

On November 7, 1963, while still being treated by Dr. Frost, plaintiff was examined by Dr. Jean Modert, who found an infection in the pelvic area only an inch and a half from the surgical incision which he determined from a culture to be staphylococcus infection. It was further determined by Dr. Modert that the wire in plaintiff's symphysis pubis was functioning as a foreign body in that the body defenses were setting up a reaction against this particular material and that it was no longer bridging the separation. He therefore removed the wire in April of 1964. He found no staphylococcus infection inside plaintiff's body. Dr. Modert did find an infection or boil on the plaintiff's left ankle and on his left groin, both of which developed after he began treating plaintiff.

Dr. Modert further testified that the foreign body reaction had nothing to do with the staphylococcus infection, itself. However, there was drainage from the area

of the wire which was coming out through the staphylococcus infection, even though all agreed that the wire was the type of foreign body intended to be left in the body. Dr. Modert also testified that he did not think the symptoms he found were in any way connected with whether or not plaintiff had a staphylococcus throat infection at the time of the original operation on the symphysis pubis.

 Our view of summary judgment proceedings was expressed in Harp v. Gulf, M. & O. R. Co., 66 Ill App 2d 33, 213 NE2d 632, at page 38:

> "The purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. Gribben v. Interstate Motor Freight System Co., 18 Ill App2d 96, 151 NE2d 443. If the pleadings, discovery depositions and exhibits, present a genuine issue as to any material fact, summary judgment should not be granted. Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98. The right of the moving party to summary judgment must be free from doubt. Miller v. Owens-Illinois Glass Co., 48 Ill App 2d 412, 199 NE2d 300. The affidavits filed in support of a motion for summary judgment will be strictly construed and must leave no question of the movant's right to judgment, but the affidavits filed in opposition thereto will be liberally construed. Tansey v. Robinson, 24 Ill App2d 277, 164 NE2d 272."

In his amended complaint plaintiff alleged that defendants, Dr. Frost and Dr. Snow:

> "(a) Undertook the orthopedic care of a difficult and complicated fracture, although the defendants were possessed of inadequate training and skill properly to treat the plaintiff's conditions and injuries.
>
> "(b) Performed an operation in attempting to wire the Symphysis Pubic while said plaintiff was suffer-

238

ing from the infection known as Staphylococcus, when the defendants knew or by the exercise of reasonable care could and should have known that no such operation should be performed or attempted to be performed while the plaintiff was suffering from such infection.

"(c) Failed adequately to follow the plaintiff's progress in his orthopedic aftercare so as to ascertain the development of the infection hereinabove described, or to take steps to prevent or heal such infection even though they knew that plaintiff suffered from such infection or by the exercise of reasonable care could or should have known.

"(d) Although the defendants saw the plaintiff regularly, they failed to read the nurses' notes with adequate care and to talk with said nurses and to talk with the plaintiff and to use their senses of observation to take such steps as would have been taken by physicians of reasonable skill and prudence in the community to prevent the placement of the wiring in or near the Symphysis Pubis or to remove the same to prevent the spread of the infection hereinabove referred to.

"(e) Failed adequately to sterilize the area so opened by the defendants, thereby permitting the infection to further spread and develop.

"(f) The defendants treated the separated Symphysis Pubis by wiring it together in an open reduction when this was not the customary, ordinary, usual or correct method of treatment for this injury.

 Scardina v. Colletti, 63 Ill App2d 481, 211 NE2d 762, was a malpractice suit for damages resulting from hemorrhaging caused by a severed blood vessel left open after a hernia operation. In denying relief the court stated the general rule governing malpractice cases, at page 488:

239

"In a malpractice action a physician will be held responsible for injuries resulting from his want of reasonable care, skill and diligence in his practice. The plaintiff must prove by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. It is not enough to prove that he made a mistake or that his treatment harmed the plaintiff; proof of a bad result or mishap is no evidence of lack of skill or negligence.

"Generally, it is necessary for the plaintiff to show by expert testimony not only that the injury occurred, but that such event does not ordinarily occur in the normal course of events without negligence. Graham v. St. Luke's Hospital, supra, pp 156, 157; Gault v. Sideman, 42 Ill App2d 96, 101, 102, 191 NE2d 436. The so-called 'common knowledge' and 'gross negligence' exceptions to the requirement of expert testimony are applicable if the negligence of the physician is so grossly apparent or the treatment is such a common occurrence that a layman would have no difficulty in appraising it. Neither exception applies to the present case."

In Graham v. St. Luke's Hospital, 46 Ill App2d 147, 196 NE2d 355, the court discussed circumstances under which exception to the general requirement of expert testimony would be made. In holding expert testimony necessary in the particular injection case before it, the court said at page 158:

"The rule is that expert testimony is not required if the negligence is so grossly apparent or the treatment is of such a common occurrence that a layman would have no difficulty in appraising it. (Citing authorities.) The rule has been applied to cases involving anesthesia, tonsillectomy, X rays and in some cases injections."

240

■ It is apparent that the charges in plaintiff's complaint concerning defendants' lack of skill and care in the treatment of plaintiff required more than common knowledge and experience to understand and thus were not within the common comprehension of laymen. (Compare Newman v. Spellberg, 91 Ill App2d 310, 234 NE2d 152.) Since plaintiff failed to indicate that he had expert medical opinion to sustain the charges in his complaint, or that he would be able to obtain such opinion in the future, the trial court correctly entered a summary judgment in favor of the defendants.

■ The proving of negligence in medical malpractice cases usually depends upon the ability of the plaintiff to secure the services of a member of the medical profession to give expert testimony as to the proper method of treatment in the particular case. The reluctance of the members of the medical profession to testify against a fellow disciple of Aesculapius makes the search for a medical expert very difficult in most cases and well-nigh impossible in some cases. For this reason the trial courts should be extremely cautious in entering summary judgment in this type of case.

Here, however, plaintiff did not urge in the trial court, nor does he urge in this court, that he has, intends to, or may be able to prove his case by expert testimony. Therefore, there is no triable issue of fact for us to consider. The judgment of the Circuit Court of Marion County is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.