WALTER UNZICKER, d/b/a Walter Unzicker Trucking Company, *et al.,* Plaintiffs-Appellants, *v.* WAYNE CHAMBERS, Defendant-Appellee.

(No. 72-74;

Third District—December 15, 1972.

Ronald Henson, of Galesburg, for appellants.

James J. Elson, of Canton, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought by Walter Unzicker, owner of a truck, and Roger Kennell, driver, to recover damages occasioned by the alleged negligence of the defendant, Wayne Chambers. The circuit court of Fulton County entered a summary judgment in favor of the defendant from which plaintiffs appeal.

The essential allegations of the complaint in this case were: on March 20, 1969, at about 10:00 P.M., Kennell was driving Unzicker's truck in an easterly direction on state highway 9, in Fulton County. At that time the defendant, while operating his motor vehicle, was driving two Black Angus cows in a westerly direction along or upon highway 9. Plaintiffs, in separate counts each alleged a duty on the part of the defendant to drive, herd or corral the cattle in such a manner as not to endanger others on the highway and then claimed the defendant was guilty of the following:

(a) The defendant drove the cattle upon the highway at night knowing they could not be seen or detected by oncoming motorists;

(b) He permitted and allowed the cattle to enter the lane of traffic for motor vehicles proceeding east on the highway knowing that the cattle could not be seen or detected by the oncoming motorists;

(c) He failed to take precaution to prevent a collision between the cattle and motor vehicles on the highway; and

(d) He failed to give warning to oncoming motorists of the hazard created when he drove the cattle on the highway, when he knew, or should have known, that plaintiff's motor vehicle was approaching.

The plaintiffs further alleged that as a proximate result of the negligence of the defendant a collision occurred, resulting in damages.

The defendant filed a Motion for Summary Judgment, attaching to the Motion a copy of defendant's discovery deposition.

The discovery deposition was taken by plaintiffs and defendant therein deposed that:

"He lived on a farm, on Route 9, on the south side of the road at the extreme eastern edge of McDonough County and while at home on the evening in question, an unknown person drove into the yard and told him there were some cows out on the road down east of him. He got his pickup truck and drove east on Route 9 about a quarter of a mile. He first saw two black cows walking slowly on the south side of the road on the shoulder, off the cement, going west. He was then only about 20 feet from the cows as the headlights did not pick them up sooner and there was no moon. He continued east to a farm driveway, turned around and came back. When he got back the cows were still going west, moving at a fast trot and were on the south edge of the road and on the cement in the eastbound lane about 100 feet from where he first saw them. They were going 'lickety cut on their own will'. I don't know what made them run, I don't know if they were afraid of me."

The following then appears on the deposition:

"Q. All right, what did you do then?

A. Well, I thought if I could get ahead of them, see, right down, oh, must be 50 or 60 feet east of the bridge there is a county line road between Fulton and McDonough County * * *. I thought if I could head them off the road and at that time the truck came over * * * he couldn't see anything * * * if I had anything to signal with and I thought I couldn't catch up with the cows, I thought, well, he's going to hit the cows and he will hit me or the cows will or one or the two. I couldn't tell how far he would knock them * * *.

Q. Did you know who these cows belonged to at any time before they were hit?

A. No, I never * * *.

Q. Did you think that these cows were yours?

A. Well, I guess I did * * *.

Q. So, then, in order to move these cattle it was your purpose to move them down the road to the county line road, would that be true?" (The question was never answered.)

The county line road was 80 to 100 feet from the point of impact. He never got a chance to drive them but he was behind the cows 20 or 30 feet. He couldn't catch up with them.

When he first saw the headlights of the approaching truck about a minute elapsed before the impact.

He had light switches and blinkers but never used them as a warning signal. He owned Black Angus cattle—had them in pasture on the north side of the road at the scene. He did not know for sure until the next morning that the cattle were not his. The approaching truck hit the cows.

Then:

"Q. Did you understand all the questions   *   *   *?

A. Yes, I believe I did.

Q. Are there any answers you would like to change at this time?

A. The only thing I wasn't driving the cattle and never was and never had a chance to.

Q. Did you ever during your deposition indicate that you were driving the cattle?

A. I don't know."

The trial court in its memorandum opinion stated:

"Chambers deposition shows clearly that when he first saw the cattle they were off the road, that he *determined* to attempt to head them off at the county line road toward which they were traveling. He drove on and turned around. At no time did he attempt to drive them, nor was he driving them. The fact that he was close behind them when they were hit, is no evidence that he was driving or herding them with his car. It clearly appears that at the time Chambers was on his way back to the county line road to head them off there and to drive them down that road to Matthews. It is no answer to say that a jury might disagree. The deposition on his point leaves no room for disagreement. The deposition leaves no question of fact as to whether Chambers was or was not herding or driving these cows at the time."

■■ The burden of proving the non-existence of a genuine issue as to any material fact is on the party who moves for summary judgment. Accordingly, any doubt as to the genuineness of a fact issue will be resolved against the moving party, and the evidence presented will be construed liberally in favor of the party opposing the motion. *McVey v. Discher*, 122 Ill.App.2d 408.

■■ Generally speaking, the rules of evidence at a trial will control as

to the evidential value or admissibility of statements of witnesses whose depositions have been taken. And a court in determining the issue of genuineness, *will ignore personal conclusions* as to motive or credibility and will *liberally construe the evidence* in favor of the party opposing the Motion for Summary Judgment. *Kamholtz v. Stepp*, 31 Ill.App.2d, 357, 369.

■■ If different inferences can be drawn by a reasonable man from facts evidenced, an issue of fact is considered to exist and summary judgment must be denied. 23 I.L.P. Judgments, Sec. 71. *Halloran v. Belt Ry. Co. of Chicago*, 25 Ill.App.2d 114, 118; 160 N.E.2d 98; *Ruby v. Wayman*, 99 Ill.App.2d 146; 240 N.E.2d 699.

Ignoring personal conclusions, opinions, self-serving statements, considering only facts admissible in evidence under the rules of evidence could it reasonably be inferred by a trier of fact that defendant had in fact commenced to drive the cattle?

■■ Defendant first stated that he was unable to see the cattle until they were only about 20 feet from him because they were black and it was a dark night. When he turned around and came back it could be reasonably inferred that his vision and visibility were the same and that he was then about 20 feet from the cattle when he saw them trotting along. He contends that he couldn't catch up to the cattle trotting along yet they remained in his vision for nearly a minute up until he lost them in plaintiffs' headlights. Ignoring defendant's statement of intent (to head them off at county line road) a jury could reasonably find that defendant was alongside or slightly to the rear of the cattle (within 20 feet of them) moving at the trotting speed of the cattle and was in fact driving them prior to the impact.

■■ Defendant argues that by failing to submit counter affidavits the plaintiffs have admitted the facts, submitted by defendant. It is true that failure to file counter affidavits admits the facts disclosed by the affidavits in support of the Motion for Summary Judgment. (*St. Louis First and Marine Insurance Co. v. Garnier*, 24 Ill.App. 408; *Renieris v. Village of Skokie*, 85 Ill.App.2d 418. However, only facts admissible in evidence are admitted (Supreme Court Rule 191), and undisputed facts may give rise to equally plausible inferences. Otherwise stated, even though there is no dispute as to the facts evidenced by the proof, if different inferences can be drawn by a reasonable man from those facts, an issue of fact is considered to exist and summary judgment must be denied.

■■ Defendant also argues that the question of whether a legal duty exists between parties is one of law and not of fact. A duty within the meaning of negligence law, arises once a person who would be under

no duty, enters into the performance of an act and whether or not a person has acted in such a manner as to cause a duty to arise is a question of fact (*Nelson v. Union Wire Rope Corp.* 31 Ill.2d 69, 74), and it is only when the undisputed facts are susceptible of but a single inference does the issue become one of law. *Halloran v. Belt Ry. Co. of Chicago, supra.*

We believe that a triable issue of fact exists and that the trial court erred in allowing defendant's Motion for a Summary Judgment. For the reasons stated above, the Summary Judgment entered in favor of defendant is reversed and the cause remanded to the trial court for further proceedings.

Reversed and remanded.

STOUDER, P. J., and ALLOY, J., concur.