GEORGE A. R. SCHUSTER, Plaintiff-Appellant, *v.* THE EAST ST. LOUIS JOCKEY CLUB, INC., *et al.*, Defendants-Appellees.

Fifth District    No. 75-317

Opinion filed April 5, 1976.—Rehearing denied May 17, 1976.

Kassly, Weihl, Bone, Becker & Carlson, of Belleville (Maurice E. Bone and Barry D. Dix, of counsel), for appellant.

Dixon, Starnes, Nester, McDonnell & Stegmeyer, of Belleville (William B. Starnes, of counsel), for appellees East St. Louis Jockey Club, Inc., and Cahokia Downs, Inc.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Bernard H. Bertrand, of counsel), for appellee George Edward Day.

Mr. JUSTICE JONES delivered the opinion of the court:

George A. R. Schuster, plaintiff-appellant, brought an action for damages for an alleged breach of a pension or deferred compensation agreement. The case was set for trial on March 31, 1975. The case was called on the morning of that date and counsel for the respective parties appeared. At the beginning of the proceedings defendants filed a motion for summary judgment accompanied by an affidavit. The court ruled, over plaintiff's objection, that the motion would be heard immediately. At the suggestion of one of the defense counsel the court further ruled, also over plaintiff's objection, that oral testimony of witnesses would be heard on the motion.

Before hearing the motion for summary judgment the court granted a recess, apparently lasting four hours and apparently to allow plaintiff to prepare a counteraffidavit. When the court reconvened, plaintiff filed a motion to strike defendants' motion for summary judgment and attached thereto the counteraffidavit. Plaintiff made several arguments in support of the motion to strike; however, plaintiff's motion was denied.

Plaintiff then made a motion for a mistrial. Plaintiff argued that allowing oral testimony during a hearing on a motion for summary judgment is "highly irregular and erroneous," is not provided for by statute or Supreme Court Rule, and is in violation of the right to "properly litigate the issues in a lawsuit." Plaintiff's motion for a mistrial was also denied.

The court then allowed defendants to call three witnesses who orally testified. After this testimony was presented, plaintiff's counsel called plaintiff to testify before the court. Before doing so, however, plaintiff's counsel renewed the objection to the entire proceeding and specifically pointed out that he did not wish to waive such objection by presenting plaintiff's oral testimony. Altogether the testimony of the four witnesses lasted 1½ days and covers 150 pages in the report of proceedings. Following the hearing the court rendered a summary judgment for the defendants.

In this appeal plaintiff raises four issues: (1) whether proper notice was given for the hearing on the motion for summary judgment; (2) whether the hearing on the motion for summary judgment was properly conducted; (3) whether the court erred in not striking the motion for summary judgment; and (4) whether the trial court's ruling was against the manifest weight of the evidence.

While we have concluded that the trial court erred in granting summary judgment in the instant case and that we need not discuss all of the issues presented for review, we wish to point out initially that this opinion should not be read as an approval of the format followed by the court below in the summary judgment hearing. Nor do we agree with defendants' contention that *Patterson v. Stern*, 88 Ill. App. 2d 399, 232

N.E.2d 7, can be read as completely approving of the manner in which the summary judgment hearing was conducted before the trial court in the instant case. Our review of *Patterson v. Stern* shows that although the trial court in that case had heard oral testimony on the motion for summary judgment, the propriety of such procedure was not put in issue before the appellate court. As we have here, the appellate court in *Patterson v. Stern* found other grounds upon which to reverse the lower court's granting of the summary judgment.

Plaintiff's original complaint was brought against the East St. Louis Jockey Club, Inc., for breach of a contract to pay plaintiff $300 per month upon his retirement. A copy of the contract was attached to the complaint as Exhibit "A." The contract was dated March 22, 1965, and was signed by George E. Day, the president and a director of the East St. Louis Jockey Club, Inc., and of Cahokia Downs, Inc., by Ann Detchemendy, secretary of the two corporations, by plaintiff, and by Betty Hartman, a witness.

Plaintiff later amended his complaint to include an allegation that the contract 'figure of Three undred Dollars ($300.00) on Exhibit 'A' was, in 1966, changed to Four Hundred Dollars ($400.00) by George Edward Day." Plaintiff also added as additional parties defendant Cahokia Downs, Inc., and George E. Day.

■■ At the summary judgment hearing the defendants presented evidence for the purpose of establishing that plaintiff had waived his rights under both the contract of March 22, 1965, and any amendment to that contract. Defendants sought to establish that plaintiff had accepted benefits under a later pension plan and that through such acceptance he was estopped from denying that the latter pension plan superseded the March 22, 1965, contract or any amendment thereof.

Defendants' evidence tended to show the following. On November 1, 1965, a meeting of the board of directors of the two corporate defendants was held. At the meeting a plan was approved whereby plaintiff, upon his retirement, would receive 25% of his salary. Under the plan the benefits would be payable for only up to ten years and the benefits could be terminated at any time by resolution of the board of directors. Plaintiff was in attendance at the meeting and said nothing either in favor of or against the plan. Six years later, shortly before his retirement, plaintiff calculated 25% of his then annual salary and directed a bookkeeper-auditor of the defendant corporations to pay that amount to him in installments of $356.17 upon his retirement. Thereafter nine monthly payments of $356.17 were made to plaintiff and accepted by him.

Defendants also introduced as evidence a manila envelope which had been found in the safe of the corporate defendants. The envelope had contained several pension plans of various employees or officers of the corporate defendants. Among the contents of the envelope had been the

March 22, 1965, contract mentioned above. Across the front of the envelope was handwritten:

> "Employment Agreements
> Deferred Compensation Contracts
>
> Superseded by new plan drawn up by Committee of Bd. of Directors and approved by the Board"

One part of this notation was written in ink and the other in pencil. Defendants' witnesses identified both parts as being in the handwriting of plaintiff.

Plaintiff's evidence tended to show the following. Plaintiff had been employed as a comptroller-auditor of the corporate defendants; however, he had never served as an officer or director of either corporation. In his capacity as comptroller-auditor he was called upon occasionally to attend meetings of the board of directors in order to bring records or answer questions concerning the corporate operations. He was not authorized to speak, and did not speak, at the meetings, except in answer to specific questions about the corporate operations. He had never, at a meeting of the board of directors or elsewhere, expressed an intention to relinquish his rights under the March 22, 1965, contract or its amendment to the $400 monthly amount. As to the latter amendment, sometime between March 22, 1965, and November 1, 1965, defendant George E. Day had, in the presence of plaintiff, changed the amount by pen insertion on a copy of the contract not in plaintiff's possession. Plaintiff later accepted the nine payments of $356.17 because he did not wish to be "picayune" about the matter, that sum being within the $300 to $400 range. Plaintiff admitted writing the first part of the notation on the manila envelope referred to above but denied writing the second part of that notation.

None of the evidence presented at the hearing tended to establish the time when the notations were placed on the manila envelope; none of the witnesses knew when the notations first appeared there. The time when the notations were made would seem to be relevant, whether the notations were made by plaintiff or by some other person, particularly in view of the ambiguity of the notations. On one hand, the notations, if made by plaintiff and if made after the November 1, 1965, meeting of the board of directors, might tend to support the theory of defendants that plaintiff relinquished his rights under the March 22, 1965, contract or any amendment thereof. On the other hand, if the notations, specifically the second part of the notations, were made prior to the November 1, 1965, meeting, then plaintiff's allegation that the March 22, 1965, contract had been amended to provide for payment of $400 per month would be supported.

Moreover, irrespective of the time at which the notations were made,

the plain ambiguity of the notations leave an important question of fact. Did the notations refer to the November 1, 1965, resolution of the board of directors or did they refer to some other activity of the board pursuant to which George E. Day may have been acting in purportedly amending the March 22, 1965, contract?

■■ ■ Additionally, as we have already pointed out, defendants intended to establish at the hearing that plaintiff had waived his rights under the March 22, 1965, contract and any amendment thereof. It is well established that a waiver is the intentional relinquishment of a known right and that a waiver can only be found if there was knowledge of the existence of the right and an intention to relinquish it. *(First Lutheran Church v. Rooks Creek Evangelical Lutheran Church,* 316 Ill. 196, 147 N.E. 53; *Pantle v. Industrial Com.,* 61 Ill. 2d 365, 335 N.E.2d 491.) Where the inferences which the parties seek to have drawn deal with questions of motive, intent, or subjective feelings and reactions, summary judgment is particularly inappropriate. *(State Farm Mutual Automobile Insurance Co. v. Short,* 125 Ill. App. 2d 97, 260 N.E.2d 415.) Here defendants sought to have an inference drawn regarding plaintiff's intent, from plaintiff's action, or inaction, on and after November 1, 1965. If the evidence is viewed most favorably to plaintiff, the inference that plaintiff intended to relinquish his rights under the March 22, 1965, contract or amendment thereof cannot be drawn.

If the testimony of defendants' witnesses at the summary judgment hearing is believed and that of plaintiff is not, we would be reluctant to disagree with the feeling of the trial court that plaintiff should not recover. But we do not know what other evidence plaintiff might produce at trial to buttress his own testimony. More importantly, however, it is not the function of the trial court on a motion for summary judgment to resolve doubts about the credibility of one side's evidence in order to reach a decision on the motion. *(Becke v. Fred A. Smith Lumber Co.,* 9 Ill. App. 3d 563, 292 N.E.2d 572.) In determining the genuineness of a fact issue the court should ignore personal conclusions as to motive or credibility and should liberally construe the evidence in favor of the party opposing the motion for summary judgment. *Unzicker Trucking Co. v. Chambers,* 8 Ill. App. 3d 992, 291 N.E.2d 231.

The court erred in granting summary judgment. The judgment of the trial court is reversed and remanded to proceed to trial.

Reversed and remanded.

G. J. MORAN and CARTER, JJ., concur.