PAUL L. ROBINSON, Plaintiff-Appellant, v. CHRISTOPHER GREATER AREA RURAL HEALTH PLANNING CORPORATION, Defendant-Appellee.

Fifth District No. 5—89—0060

Opinion filed January 7, 1991.

GOLDENHERSH, J., dissenting.

Douglas N. Dorris, of Harris & Lambert, of Marion, for appellant.

Edwina Warner, of Troutt, Alexander, Popit & Warner, of Benton, for appellee.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Paul L. Robinson, appeals from an order of the circuit court of Franklin County granting the motion for summary judgment of defendant, Christopher Greater Area Rural Health Planning Corporation, under section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005). We affirm.

In April of 1983, Robinson was hired by defendant, a not-for-profit health care corporation, as its vice-president for fiscal services, at a salary of $40,000 per year. Within 90 days, Robinson's title was changed to executive vice-president. Robinson, however, did not perceive any change in his duties. Shortly after he began working for defendant, the personnel director gave Robinson a copy of the personnel handbook. Robinson's understanding of the manual was that "it was to provide directions, procedures, and policies for employees to abide by." At the time he was hired by defendant, Robinson believed he could remain in defendant's employ up until the time he retired so long as his work remained satisfactory.

On April 1, 1984, Robinson's salary was increased to $42,000 per year. Subsequently, on April 1, 1985, his salary was raised to $46,000 per year. In July 1985, defendant terminated Robinson's employment. Initially, the executive director, Jerry Cummings, informed Robinson in person he had been terminated. A short time later, Robinson received a letter from Cummings stating that the executive vice-president position which he had held had been abolished and that his termination was not a result of poor performance. In his deposition, however, Cummings revealed that one of the reasons Robinson's position was abolished was because Robinson had voiced a reluctance to travel to defendant's satellite offices.

Other employees of defendant gave differing versions of why Robinson was terminated. The clinic administrator, Kim Battaglia, stated in her deposition the reason for Robinson's termination was because a new computer system was not being integrated into the accounting system quickly enough. Battaglia also commented that the termination made no economic sense because a new fiscal officer was hired after Robinson's termination at a salary of $40,000. This officer performed only fiscal duties while Robinson, at a salary of $46,000 per year, performed the same fiscal duties in addition to serving as assistant executive director. William Moorman, an independent public accountant working for defendant, testified there were several reasons for Robinson's discharge. First, several members of defendant's board of directors, including Cummings, were concerned with Robinson's inability to get the new computer system on line and running properly. Second, they were concerned about his reluctance to travel to satellite offices. Finally, they had reservations about Robinson's not being a "team player" and his inability to get along with Cummings.

Members of defendant's board of directors expressed varying accounts of why Robinson was terminated. Norman Snyder stated Robinson was terminated solely at the undertaking of Cummings. Ac-

cording to Snyder, the board was not involved in the decision to terminate him, and Snyder himself had received no complaints about Robinson's job performance. It was Snyder's understanding that the position was no longer needed and, therefore, abolished. Board chairman Charles Prather testified Robinson was terminated because he was not doing his job correctly. Another board member, Thomas Vaughn, believed Robinson was fired because he was not doing the job that was expected of him. Vaughn's understanding was that Robinson did not want to travel as extensively as the job required and that the new computer system was not being brought on line quickly enough. Vaughn further stated he knew nothing specific that Robinson had done or not done from April 1, 1985, when he received a $4,000 raise, until July, when terminated, which would have been grounds for termination.

The 1983 employee handbook, entitled "Christopher Greater Area Rural Health Planning Corporation's Manual of Rules, Regulations, Policies, and Procedures," comprising some 58 pages and 10 chapters, contains numerous provisions concerning employee evaluations. Those pertinent to this case include:

"Section 7.030—Employee Evaluations

a. A written, itemized summary of an employee's performance shall be termed an employee evaluation.

b. All employee evaluations shall be conducted by said employee's appropriate authority.

c. All employees shall be evaluated at the end of their probationary period.

d. All employees shall be evaluated at least annually, and said evaluation shall be completed prior to the date of preparation for the annual budget.

e. All employee evaluations shall be reviewed by the President or his designee.

f. All employee evaluations shall be reviewed by the affected employee and signed by said employee.

g. All employee evaluations shall be maintained by the Personnel Manager.

h. All employees being separated from the Corporation shall be evaluated prior to the date of separation, and said evaluation shall follow the guidelines in paragraphs b, e, and f of this section.

i. When a supervisor, manager, Vice-president, or the President is being separated, said person(s) shall evaluate all employees within the scope of their authority.

j. An employee may be evaluated when, at the request of the President or his designee, said employee's performance is of a nature either being exceptionally outstanding, or exceptionally substandard."

"Section 7.032—Evaluation of Vice-Presidents, Managers, and Supervisors

a. Evaluations of Vice-Presidents, Managers, and Supervisors shall be conducted by the President at least annually, and said evaluations shall be referred to the Board for approval and recommendations as to disposition, compensation, and advancement."

"Section 7.033—Evaluation Format

a. It shall be the responsibility of the Corporation to provide an appropriate printed format for the documentation of all evaluations.

b. Evaluation Formats shall include at least the following criteria:

1. Quality of Work
 (a) Accuracy
 (b) Neatness
 (c) Thoroughness
 (d) Economy
2. Quantity of Work
 (a) Productivity
3. Dependability
 (a) Follows Instructions
 (b) Judgement
 (c) Punctuality
 (d) Attendance
4. Cooperation
 (a) With Appropriate Authority
 (b) With Other Employees
 (c) With Clients/Patients
 (d) With Public
 (e) With Other Health Providers
5. Initiative
 (a) Ingenuity
 (b) Self Reliance
 (c) Planning
6. Self Improvement
 (a) Interest
 (b) Observation

 (c) Questions
 (d) Study
 7. Personality
 (a) Appearance
 (b) Courtesy
 (c) Friendliness
 8. Additional Comments by evaluator.
 c. All evaluation formats shall be maintained by the Personnel Manager."

The handbook also contains the following paragraph found in section 7.010(h), entitled "Job Descriptions:"

"h. The Corporation assumes no contractual liability to any employee via the job description or this publication. The employee shall hold the Corporation harmless from liability due to the nature, scope, or assignment outlined by any job description."

The question we are asked to determine is whether the trial court erred by granting summary judgment for defendant. Robinson contends the record is replete with testimony supporting his position that the employment manual was a document regarded and relied upon by both employer and employees as creating standards to which both sides had to conform. Robinson asserts the manual made it mandatory for an employee to be evaluated before discharge and, therefore, the manual created an enforceable right to this evaluation prior to discharge. Defendant, on the other hand, replies its manual does not contain any provisions which would change the at-will status of its employees.

■■■ Under Illinois law, an employment relationship without a fixed duration is terminable at will for any reason or no reason at all, absent a violation of clearly mandated public policy. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Hogge v. Champion Laboratories, Inc.* (1989), 190 Ill. App. 3d 620, 628, 546 N.E.2d 1025, 1030.) In *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, our supreme court interpreted the general "employment-at-will rule" as a rule of construction which mandates a presumption that hiring without a fixed term is at will, a presumption which can be overcome, however, by demonstrating that the parties contracted otherwise using traditional requirements of contract formation. (115 Ill. 2d at 489, 505 N.E.2d at 318.) As stated by the *Duldulao* court:

"[W]e hold that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the lan-

guage of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." 115 Ill. 2d at 490, 505 N.E.2d at 318.

Robinson alleges the provisions in sections 7.030 to 7.034 of defendant's manual constitute a clear promise for annual evaluations and, more importantly, evaluations prior to discharge which would lead a reasonable employee to conclude defendant was making an offer it would not discharge employees without an evaluation informing the employee of the alleged unsatisfactory conduct and the opportunity to correct such conduct. We need not address this contention as the manual itself contains a disclaimer negating any such possible promises made by virtue of its contents. Unlike the introduction to the handbook in *Duldulao*, which stated that the policies in the handbook were "designed to clarify your *rights* and duties as employees" (emphasis in original) (115 Ill. 2d at 491, 505 N.E.2d at 319), here we have an express statement declaring defendant "assumes no contractual liability to any employee via the job description *or this publication*" (emphasis added). Several courts since *Duldulao* have held express disclaimers in employee handbooks negate any promises made. For example, in *Hogge v. Champion Laboratories, Inc.* (1989), 190 Ill. App. 3d 620, 546 N.E.2d 1025, we determined that the following language found in defendant's employee handbook constituted an express disclaimer:

"This handbook serves only to outline Champion's major employment policies. It is not intended, and shall not be considered all inclusive or construed as an employment contract. This handbook reflects the company policy at the time of publication. The Company, of course, may improve or change these policies and reserves the right to do so at any time." (190 Ill. App. 3d at 623, 546 N.E.2d at 1027.)

Likewise, in *Moore v. Illinois Bell Telephone Co.* (1987), 155 Ill. App. 3d 781, 508 N.E.2d 519, the court referred to the observation of the *Duldulao* court that the handbook in question contained no disclaimers to negate the promises made. The *Moore* court went on to con-

clude that under the facts of the case before it, no employee could reasonably have believed an offer to have been made when the incentive plan in question stated: "[T]he Plan is a statement of management's intent and is not a contract or assurance of compensation." (155 Ill. App. 3d at 784, 508 N.E.2d at 521.) Such language clearly revealed the employer was promising nothing in the incentive plan. Yet another example is found in *Bennett v. Evanston Hospital* (1989), 184 Ill. App. 3d 1030, 540 N.E.2d 979, where the employee handbook contained a statement in its introduction declaring that the handbook was not intended to create a contract of employment. This too was found to be an express disclaimer. 184 Ill. App. 3d at 1031, 540 N.E.2d at 980.

■ ■ Robinson argues, however, that the disclaimer here is limited to job description only. If this were true, why were the words "or this publication" added to the disclaimer? Surely defendant did not include such words solely for the limited effect Robinson suggests. Moreover, Robinson himself testified in his deposition he did not consider the manual any type of contract. If he did not so consider it, how can we declare otherwise? The record reveals the employees used the manual only as a guide, not as a set of mandatory rules and regulations. Even Robinson did not follow all of its suggestions. For instance, he too did not complete evaluations of those employees under his supervision. Under such circumstances, we find the trial court correctly granted summary judgment in favor of defendant in this instance. The question of the existence of a contract is a matter of law for determination by the court. (See, *e.g., Bennett*, 184 Ill. App. 3d at 1033, 540 N.E.2d at 981.) Robinson quite simply was an at-will employee who could be terminated at any time for any reason. See *Hogge*, 190 Ill. App. 3d at 630, 546 N.E.2d at 1032. See also *Rudd v. Danville Metal Stamping Co.* (1990), 193 Ill. App. 3d 1009, 1012, 550 N.E.2d 674, 676.

For the foregoing reasons, the order of the circuit court of Franklin County granting summary judgment for defendant is affirmed.

Affirmed.

CHAPMAN, J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.
Summary judgment shall be rendered on a party's motion "if the pleadings, depositions, and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. (*Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472, 476, 406 N.E.2d 946, 951.) In ruling on a summary judgment motion, the trial court must construe the pleadings, depositions, and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Cimino v. Dill* (1980), 92 Ill. App. 3d 345, 348, 415 N.E.2d 1272, 1274.) The right of a party to summary judgment must be clear and free from doubt. (92 Ill. App. 3d at 348, 415 N.E.2d at 1274-75.) In the instant case, defendant's right to summary judgment is not clear and free from doubt.

I first address plaintiff's claim that he was terminated from his employment in violation of policy statements contained in the 1983 personnel manual. There are provisions in sections 7.030 to 7.034 of the manual that require employees be evaluated periodically in writing, including a mandatory evaluation prior to separation. This final evaluation is required to be reviewed by the president and the employee and signed by the employee. Section 7.032 mandates that vice-presidents, a position held by plaintiff, be evaluated by the president annually with such evaluations being referred to the board of directors for approval and recommendation as to disposition. Essentially, plaintiff argues that these provisions constituted a clear promise for annual evaluations and, more importantly, evaluations prior to discharge which would lead a reasonable employee to conclude that defendant was making an offer that it would not discharge employees without an evaluation informing the employee of the alleged unsatisfactory conduct and the opportunity to correct such conduct. On review of the language relied on by plaintiff, I conclude that it meets *Duldulao*'s requirements of a clear promise.

Under the general provisions in section 1.019(a) of the manual, it is stated that "shall is mandatory and may is permissive." Section 7.030(d) goes on to state that "[a]ll employees shall be evaluated at least annually, and said evaluation shall be completed prior to the date of preparation for the annual budget." Section 7.030(f) states that "[a]ll employee evaluations shall be reviewed by the affected employee and signed by said employee." Finally, section 7.030(h) states that "[a]ll employees being separated from the Corporation shall be evaluated prior to the date of separation." I would find that this language may lead a reasonable employee to conclude that he or she would not

be separated from defendant's employment without an evaluation informing that employee of his or her unsatisfactory conduct and the opportunity to correct the deficiency. These sections were therefore sufficient to constitute a promise by defendant to its employees that certain procedural due process rights would be afforded to an employee before he or she could be terminated.

In determining that there was no genuine issue as to material fact and that defendant was entitled to judgment as a matter of law, the trial court found that the manual contained a disclaimer negating the promises made. Defendant also relies on this so-called disclaimer clause to support its position that the trial court did not err in granting summary judgment in its favor.

In contrast to the disclaimers noted by the majority, the alleged disclaimer clause in the instant case is found buried within section 7.010(h) of the manual entitled "Job Descriptions." It states:

> "The Corporation assumes no contractual liability to any employee via the job description or this publication. The employee shall hold the Corporation harmless from liability due to the nature, scope, or assignment outlined by any job description."

In my view, the trial court erred in finding this to be a general disclaimer. The placement of the clause in the manual, as well as the wording of the clause itself, leads to the conclusion that this disclaimer is limited to job description only. This disclaimer is not strong enough to overcome a reasonable employee's belief that an offer had been made.

The second requirement under *Duldulao* is that the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. In the instant case, all employees were given a copy of the manual and the manual was expected to be followed. Plaintiff was given a copy of the manual shortly after he started working for defendant. Plaintiff's understanding of the manual was that "it was to provide directions, procedures, and policies for employees to abide by." The trial judge placed great emphasis on deposition testimony in which plaintiff stated that he did not consider the manual to be a contract. Defendant also relies on this statement to argue that the manual did not create a binding contract. I believe this statement must be reviewed in context. During his discovery deposition, plaintiff was asked by defendant's attorney:

> "Q. Was it your understanding, at the time you were working, that this manual was any type of contract?
> A. No, madam.

Q. Did you follow the manual?

A. To the best of my ability, yes.

Q. Was the manual followed generally at the clinic?

A. No, madam.

Q. Who didn't follow it?

A. I—I can't tell you everybody didn't follow it. I don't know.

Q. Well, why did you say it wasn't followed.

A. Well, there's things that weren't done.

Q. Like what?

A. The evaluations.

Q. You're speaking of the evaluations of the employees at the clinic?

A. Right.

Q. Did you evaluate the employees who were under you?

A. Yes, madam.

Q. How did you do that?

A. I evaluated personnel, you know, with employees.

Q. Did you do it in writing?

A. To the best of my knowledge I did, yes.

Q. Did you ever do it orally?

A. Yes, madam.

Q. These would be the employees in your bookkeeping department or other employees that you supervised at the clinic?

A. Right.

Q. Was it any way part of your responsibility to see that the manual was enforced or followed?

A. Yes, madam.

Q. How was that part of your responsibility, in your opinion?

A. As it was the responsibility of every person within management—within the organization.

Q. To follow the guidelines in the manual?

A. Yes, madam."

In his order granting defendant's motion for summary judgment, the trial court expressly held "[t]he Plaintiff stated in depositions that the manual was not followed and he did not consider it a contract." However, in light of the strict standards which govern the granting of a motion for summary judgment, I believe the trial court erred in granting summary judgment for defendant based in large part on plaintiff's statement that he did not consider the manual to be a contract. If the evidence is viewed in the light most favorable to plaintiff,

it can be concluded that plaintiff was aware of the contents of the manual and reasonably believed the manual to contain an offer. The above-quoted language of plaintiff's deposition shows that plaintiff followed the terms of the manual and that except for evaluations, all other provisions in the employee handbook were followed by defendant's employees. Plaintiff's being asked whether he considered the manual to be a contract could be objectionable at trial, as it calls for a legal conclusion. I believe that there was sufficient evidence presented by plaintiff to raise a genuine issue of material fact as to whether plaintiff reasonably believed that an offer had been made. Plaintiff's statement is damaging, but we do not know what other evidence plaintiff might produce at trial to buttress his own position. *Schuster v. East St. Louis Jockey Club, Inc.* (1976), 37 Ill. App. 3d 483, 487, 345 N.E.2d 168, 170.

Finally, defendant gave the manual to plaintiff with the intent that plaintiff become familiar with it. In fact, section 5.006 specifically states:

> "a. Employees shall familiarize themselves with the Manual of Rules, Regulations, Policies and Procedures.
>
> * * *
>
> f. An employee's lack of knowledge in reference to any items covered in this section, shall not be considered useable in their defense of any violations of said items."

There is no question but that plaintiff continued to work with knowledge of defendant's manual. Thus, the requirements set forth in *Duldulao* were met here.

Contrary to defendant's assertion that even if a contract is found to exist, plaintiff's termination did not violate provisions of the manual, it is reasonable to infer from the language of the manual that the evaluations specified therein were not merely academic and meaningless exercises, but rather that they were intended to be performed in order to give an employee a chance to improve his or her performance and thereby avoid discharge. An employee reading the handbook could reasonably believe that he or she would not be terminated without such evaluation and opportunity to improve. Likewise, an employee could reasonably believe that he would not be terminated except for good reason. As pointed out earlier in this opinion, it is not clear why plaintiff was dismissed. There were several different theories given by members of the board and by plaintiff's colleagues. Defendant rightly points out that plaintiff himself, as executive vice-president, did not consistently perform employee evaluations nor did plaintiff request any of his rights under the manual such as an em-

ployee evaluation or review of the actions taken by Jerry Cummings in dismissing him. These issues are better left for the trier of fact to determine the reasonableness of plaintiff's position that a contract was, in fact, made. Accordingly, I conclude that there are genuine issues of material fact and that the trial court erred in finding that the personnel manual did not constitute a contract as a matter of law. Therefore, we should find that the trial court erred in granting summary judgment for defendant, but that its denial of summary judgment for plaintiff was appropriate, and remand this cause for further proceedings.