JOHN A. MOORE *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellant and Cross-Appellee.

Second District No. 2—86—0291

Opinion filed May 18, 1987.

Paul Noland, Nancy A. McKeating, and Michael C. Borders, all of Rooks, Pitts & Poust, and James S. Whitehead, J. Andrew Schilickman, and Holly A. Harrison, all of Sidley & Austin, both of Chicago, for appellant.

Robert F. Van Epps, of Elmhurst, for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Illinois Bell Telephone Company, appeals from a judgment of the circuit court of Du Page County in favor of plaintiffs, John A. Moore (Moore) and Raymond L. Berens (Berens), in the amount of $196,655 for Moore and $262,289 for Berens. Plaintiffs cross-appeal from the circuit court's denial of attorney fees and prejudgment interest.

The record shows that plaintiffs' claim and the trial court's judgment were based upon a document (the incentive plan) entitled "Performance Measurement and Compensation 1982." Although defendant in its brief discusses the applicability of *quantum meruit*, this case was not litigated on that theory in the trial court, the trial court did not premise the judgment on that theory, and plaintiffs do not argue in their brief that the judgment may be sustained on that theory. Accordingly, we will not address the applicability of *quantum meruit*, but rather will consider only those theories argued by the parties based on the incentive plan.

Defendant contends that the judgment is erroneous, because plaintiffs were not entitled to the amounts awarded under the incentive plan as a matter of contract law or under the doctrine of promissory estoppel. Plaintiffs dispute both of these contentions and, on cross-appeal, argue that two statutes entitled them to attorney fees (Ill. Rev. Stat. 1985, ch. 13, par. 13) and prejudgment interest (Ill. Rev. Stat. 1985, ch. 17, par. 6402). We reverse the awards to plaintiffs. Because plaintiffs' argument that they are entitled to attorney fees and prejudgment interest depends on their being the prevailing parties, we affirm the denial of attorney fees and prejudgment interest based upon our reversal of the awards for plaintiffs.

Plaintiffs worked for defendant as account executives. In 1982, there were three components to plaintiffs' pay: base salary, incentive pay, and merit award. In dispute is the amount of incentive pay to which plaintiffs were entitled for 1982.

The subject of incentive pay—including how the amount was to be determined—was covered extensively in the written incentive plan. This incentive plan was distributed by defendant to the employees it affected, including plaintiffs as account executives.

The first page after the incentive plan's title page contained only three sentences, which read:

> "AT&T reserves the right to amend, change, or cancel the Incentive Plan at its discretion. It also reserves the right to reduce, modify, or withhold awards based on individual performance or management modification. The Plan is a statement of management's intent and is not a contract or assurance of compensation."

The reference to "AT&T" was due to the incentive plan's having been written by AT&T. Defendant, which in 1982 was a wholly owned subsidiary of AT&T, chose to use the incentive plan for that year.

Plaintiffs were assigned to a "module" which sold telecommunications equipment to one customer: Bell Telephone Laboratories (Bell Labs), which in 1982 was also a subsidiary of AT&T. The details of the operation of the incentive plan are not relevant to our disposition of this case, so they will not be set forth here. It suffices to note that during 1982 the parties operated under the incentive plan. This included setting goals for plaintiffs' sales for the year, periodically reviewing those goals in light of current information, and revising those goals upward twice, first to include additional products and second because of better-than-expected sales. Plaintiffs' final sales totalled 805.2% of their goal. In early 1983, defendant reviewed plaintiffs' incentive pay and decided that plaintiffs' achievement was due in part

to the parties setting plaintiffs' goals too low because of a failure to fully appreciate the effects that (1) Bell Labs, being another AT&T subsidiary, and (2) the breakup of AT&T on January 1, 1983, would have on 1982 sales to Bell Labs. Defendant decided not to set plaintiffs' incentive pay under the incentive plan. Rather, plaintiffs were paid the same amount as the account executive who had received the most incentive pay for selling to customers who were not AT&T subsidiaries.

Defendant first argues that the incentive plan created no enforceable contractual rights, so the judgment cannot be sustained as a matter of contract law. We agree.

Our supreme court recently set forth the principles under which this issue must be analyzed:

> "[A]n employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318.)

The incentive plan did not create any enforceable contractual rights because the first requirement for contract formation was not present; that is, the incentive plan did not "contain a promise clear enough that an employee would reasonably believe that an offer ha[d] been made." *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318.

The reason an employee could not reasonably believe an offer had been made lies on the second page of the incentive plan, in the language quoted in full above. Those three sentences, especially the last one stating "[t]he Plan is a statement of management's intent and is not a contract or assurance of compensation," make it clear that defendant in the incentive plan was promising nothing. Therefore, it would not be reasonable for an employee to believe that defendant had made an offer in the incentive plan, and so no enforce-

able contractual rights were created by that plan. See *Hughes v. Encyclopaedia Britannica, Inc.* (1954), 1 Ill. App. 2d 514, 517-19, 117 N.E.2d 880, 881-82 (pension plan, which included provision stating that no contractual relationship was intended or created between employee and employer, did not give rise to a contractual relationship); *McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 508, 411 N.E.2d 936, 943 ("[W]here the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer"); J. Calamari & J. Perillo, Contracts sec. 2—7 (2d ed. 1977) (distinguishing "offers" from "statements of intention"); *cf. Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 491, 505 N.E.2d 314, 319 (in holding that statements in an employee handbook were an offer, the court found it significant that "the handbook contains no disclaimers to negate the promises made").

Plaintiffs, in construing the language of the incentive plan under discussion, argue:

> "The third sentence of the clause provides, initially, that management intends to do what the Plan sets forth. It then states, that the Plan 'is not a contract or an assurance of compensation.' It is not an assurance of compensation because the first sentence reserves the right to amend, change or cancel the Plan. This right, however, must be construed to apply only prospectively \*\*\*. The Plan also is plainly not an independent, bargained contract. This, however, does not prevent it from creating binding obligations on Defendant's part.
>
> \* \* \*
>
> The Plan is plainly an offer to modify the existing employment agreement between the parties, which offer was accepted when Plaintiffs performed pursuant to the Plan."

Thus, plaintiff interprets the language as surplusage merely descriptive of the effect of other parts of the plan. We find this argument ingenious, but unpersuasive. A fair reading of the three sentences leads to but one reasonable conclusion: that defendant was not promising, and did not intend to be bound by, anything in the incentive plan.

 The second basis on which it is contended the judgment for plaintiffs may be sustained is promissory estoppel. Promissory estoppel is a doctrine under which, in appropriate circumstances, a promise not supported by consideration will be enforceable. (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 124, 311 N.E.2d 138, 140; *Huggins v. Central National Bank* (1984), 127 Ill. App. 3d 883, 886, 469 N.E.2d 302, 304.) For plaintiffs to prevail on a promis-

sory estoppel theory, there must have been (1) a promise, unambiguous in its terms, (2) which defendant expected and could have foreseen would be relied upon by plaintiffs, (3) who relied upon the promise, (4) to their detriment. (See, *e.g.*, *Dale v. Groebe & Co.* (1981), 103 Ill. App. 3d 649, 653, 431 N.E.2d 1107, 1111.) As explained in the discussion of why no enforceable contractual rights were created, the three sentences on the page following the title page made it clear that defendant was promising nothing in its incentive plan. Therefore, there was no promise unambiguous in its terms, and the doctrine of promissory estoppel is inapplicable.

The awards for plaintiffs were, therefore, erroneous and must be reversed. Because plaintiffs' claims on cross-appeal regarding the denial of attorney fees and prejudgment interest presuppose their entitlement to the underlying judgment, the denial of attorney fees and prejudgment interest is affirmed.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

HOPF and WOODWARD, JJ., concur.