Ellanoyes MONTGOMERY, Plaintiff,

v.

ASSOCIATION OF AMERICAN RAILROADS, Defendant.

No. 89 C 5406.

United States District Court, N.D. Illinois, E.D.

July 16, 1990.

---

Ellanoyes Montgomery, Chicago, Ill., pro se.

George Hamman, Hamman & Benn, Marvin N. Benn, Dawn M. Cassie, Chicago, Ill., for plaintiff.

John L. Collins, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Defendant, Association of American Railroads, has moved for partial summary judgment and to strike plaintiff's jury demand. Defendant seeks summary judgment on Count IV of plaintiff, Ellanoyes Montgomery's, amended complaint. According to defendant, that count is the only one on which plaintiff is entitled to a jury trial, so defendant requests that plaintiff's jury demand be stricken if summary judgment is entered in defendant's favor on Count IV.

In Count IV of the amended complaint, plaintiff alleges a claim for breach of her employment contract. The relevant allegations of Count IV state:

12. At the time of Plaintiff's employment with AAR, AAR had in effect certain written policies regarding progressive discipline and termination for good cause. These policies were distributed to AAR employees, including Plaintiff. A copy of the policy is attached as Exhibit A and incorporated herein. After receipt of these policies, Plaintiff continued her employment in reliance upon them. These policies created a binding contract of employment between Plaintiff and AAR.

13. Contrary to the terms of her employment, Plaintiff was not allowed an opportunity to improve the alleged deficiencies in her performance but was in fact terminated after working only one day during her probationary period. AAR breached the terms of its employment contract created by the written policies by terminating Plaintiff on November 28, 1988, without prior warning, without allowing reasonable time to improve, without allowing reasonable time to show good faith effort and without cause.

Attached to the amended complaint was a copy of a three page document, referred to as I.C.7., setting forth defendant's discipline policies and procedures. Defendant contends that it is entitled to summary judgment under Illinois law because there is no genuine issue as to any material fact as to one or more of the following propositions: (1) "The language in the policy upon which plaintiff relies was insufficient to form a contract;" (2) "[t]he disclaimer in the preamble to policy manual precludes [plaintiff's] contract claim;" and (3) "plaintiff cannot establish that defendant breached any contract."

Summary judgment should be rendered:

[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.

FRCP 56(c). The 7th Circuit has said that:

Summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).... The summary judgment standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." [*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)].

*Teamsters Local 282 Pension Trust Fund v. Angelos,* 839 F.2d 366, 369–70 (7th Cir. 1988). In order to determine whether this standard has been met with respect to Count IV of the amended complaint, it is necessary to understand the Illinois law concerning employment manuals, handbooks, and policy statements.

■ The Illinois Supreme Court in *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), held:

[T]hat an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and

under traditional principles a valid contract is formed.

*Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). In holding that statements in an employee handbook were an offer, the *Duldulao* court found it significant that "the handbook contains no disclaimers to negate the promises made." *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 491, 106 Ill.Dec. 8, 13, 505 N.E.2d 314, 319 (1987). Because a disclaimer of intent to form a contract generally will make it unreasonable for an employee to believe that a handbook, employment manual or other policy statement contains an offer, see *Moore v. Illinois Bell Telephone Company,* 155 Ill.App.3d 781, 785, 108 Ill.Dec. 358, 360, 508 N.E.2d 519, 521 (1987), courts following *Duldulao* have taken the *Duldulao* court's hint and given effect to such disclaimers. *E.g., Morgan v. Harris Trust and Savings Bank of Chicago,* 867 F.2d 1023, 1029 (7th Cir.1989); *Wojcik v. Commonwealth Mortgage Corporation,* 732 F.Supp. 940, 941 (N.D.Ill.1990); *Hogge v. Champion Laboratories, Inc.,* 190 Ill.App.3d 620, 627–30, 137 Ill.Dec. 912, 917–18, 546 N.E.2d 1025, 1030–31 (1989); *Bennett v. Evanston Hospital,* 184 Ill.App.3d 1030, 1031–33, 133 Ill. Dec. 113, 114–15, 540 N.E.2d 979, 980–81 (1989); *Moore v. Illinois Bell Telephone Company,* 155 Ill.App.3d 781, 784–85, 108 Ill.Dec. 358, 360, 508 N.E.2d 519, 521 (1987).

Plaintiff has cited an opinion of the First District of the Illinois Appellate Court in which the court declined to give effect to a disclaimer. See *Perman v. ArcVentures, Inc.,* 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1990). In *Perman* the court did not discuss any of the prior cases in which disclaimers had been given effect, including the First District's own *Bennett v. Evanston Hospital,* 184 Ill.App.3d 1030, 133 Ill.Dec. 113, 540 N.E.2d 979 (1989). *Perman v. ArcVentures, Inc.,* 196 Ill. App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1990). This court finds the reasoning of cases like *Morgan, Moore,* and *Bennett* more persuasive than that of *Perman.* Moreover, this court is of the opinion that

the Illinois Supreme Court would not follow *Perman*, but would instead give effect to a disclaimer as clear as the one at issue in *Perman*. *Perman* will therefore not be followed.

■ Plaintiff filed an affidavit in which she states that she never received a copy of the written preface to the policy manual containing the disclaimer. Moreover, in the affidavit plaintiff states that Alice Trojnar of defendant's Personnel Department gave her a copy of I.C.7. in response to plaintiff's request for policy statements regarding defendant's disciplinary procedures, and did not give plaintiff a copy of the preface with the disclaimer. I.C.7. specifically sets forth the behavior warranting disciplinary action; the procedures to be followed in investigating different kinds of alleged misconduct; a standard for the employee to meet during any probationary period; the possible actions to be taken at the conclusion of a probationary period; and that termination would be the result of a third offense in one year that would warrant a probationary period. Thus I.C.7. was communicated to plaintiff and contained promises clear enough for her to reasonably believe that an offer had been made. *Duldulao v. Saint Mary of Nazareth Hospital*, 115 Ill.2d 482, 489–91, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

Defendant argues:

> However, the language in that policy is insufficient to establish such a contract, and AAR remained free to discharge Montgomery at any time. The relevant language in the policy is as follows:
>
>> During the probationary period it is imperative that the employee demonstrate a good-faith effort to immediately correct the performance deficiency. Lack of such effort may lead to immediate discharge during the probationary period.
>
> This language falls far short of the "clear" language limiting the employer's right to terminate found in *Duldulao*.

The language quoted, contrary to defendant's argument, is sufficiently clear that it could provide the basis for a contract. Moreover, again contrary to defendant's argument, the quoted language need not be considered in isolation in determining whether a contract was formed. When it is considered together with the other language in I.C.7., there can be no doubt that I.C.7. contains promises sufficiently clear that plaintiff could reasonably believe an offer was being made. Because defendant has not argued that summary judgment should be granted because the second or third elements of the *Duldulao*-test were not present, this is sufficient to dispose of defendant's argument that the language in the policy upon which plaintiff relies was insufficient to form a contract. *Duldulao v. Saint Mary of Nazareth Hospital*, 115 Ill.2d 482, 489–91, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

■ With respect to the disclaimer in the preface of the policy manual, defendant has stated the following as undisputed facts:

> 18. The Association of American Railroads had a Policy and Procedure Manual.... Montgomery did not see the manual prior to becoming employed.... Montgomery saw it lying on a table in the AAR library and in 1988, before she received the November 18, 1988, probation letter, read the section on probation and discipline after consulting a lawyer....
>
> 19. The preface to the manual states as follows in the fourth paragraph:
>
>> Nothing in this manual in any way creates an express or implied contact of any kind between the Association and any of its employees. It is understood that the employment of each of the Association's employees is terminable at will, so that both the Association and the employee remain free to choose to end the work relationship.

The language of the disclaimer was sufficiently clear that, if distributed as part of an employment manual, handbook or policy statement, it would be given effect in Illinois. However, it was not so distributed, insofar as the facts not in dispute are concerned. I.C.7. was given to plaintiff without any disclaimer attached.

It would be an unwarranted extension of the principle of the cases giving effect to disclaimers in employment manuals, handbooks and policy statements to give effect to a disclaimer that was not distributed as a part of the policy statement at issue, and was apparently not distributed to the employee at all. An uncommunicated disclaimer is no disclaimer at all. Therefore, in order to be effective, a disclaimer of the intent to contract must be disseminated to an employee in such a manner that the employee is aware of its contents before the time a contract would be formed in the absence of the disclaimer. See *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 490–91, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), setting forth parallel requirements for an offer. While it may be possible to secure a surrender of contractual rights granted in an employment manual, handbook or policy statement by the formation of a new contract, it is unnecessary to decide that question since the elements of such a new contract have not been shown in the undisputed facts. Also, it is unnecessary to determine whether, and under what circumstances, a disclaimer given prior to distribution of, but not given with, an employment manual, handbook or policy statement would be given effect, because that situation, too, is not presented in the case at bar.

The disclaimer was not disseminated to plaintiff before the contract was formed. Therefore, defendant is not entitled to partial summary judgment based on the disclaimer.

■ With respect to defendant's third argument, that plaintiff cannot establish that defendant breached any contract, defendant argues:

Montgomery's November 18, 1988 probationary letter reiterated the language of the disciplinary policy that:

During this time, it is imperative that you demonstrate a good faith effort to correct your substandard performance and to perform your job responsibilities in a satisfactory fashion. *Lack of such effort may lead to immediate discharge during the probationary period.*

(Emphasis added.) The undisputed facts reflect that Montgomery failed to demonstrate a good faith effort to improve her performance. Indeed, on Monday, November 21, the very next working day after she received the November 18, probationary letter, she disappeared from work at noon without asking for or receiving permission, and without even telling anyone she was leaving.... She called the next day and said that her doctor told her not to go to work until the following Monday, thus raising the spector [sic] of yet another round of questionable absences. And, finally, upon returning to work, she presented letters attacking the basis of her probation and accusing AAR managers of harassment, and Randy Jackson in particular, of making racial slurs some two years earlier. These events clearly justified AAR's conclusion that Montgomery had failed to exhibit a good faith effort to improve her performance, including her attitude toward her supervisors, and thus her termination was entirely proper, given the AAR's express reservation of the right to terminate her during the probationary period.

This does not establish as a matter of law that plaintiff failed to "demonstrate a good faith effort to correct [her] substandard performance and to perform [her] job responsibilities in a satisfactory fashion." Defendant never contends as undisputed, so presumably disputed, are questions of whether plaintiff had a valid medical reason for not being at work in this period, whether her letters were factually well-founded, and whether regardless of the letters she was (or would have) made a good faith effort to perform her job in a manner defendant could legitimately require. It is therefore possible, even assuming arguendo that the paragraph of I.C.7. defendant identifies is the only relevant provision of the contract to the claim in Count IV of the amended complaint, that plaintiff could prove a set of facts entitling her to judgment.

Therefore, the portion of defendant's motion seeking partial summary judgment will be denied. The portion of the motion seeking to strike plaintiff's jury demand, premised as it was on defendant's success on the portion of the motion seeking partial summary judgment, will also be denied.

Federal Rule of Civil Procedure 56 provides:

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material

**1318**

facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

FRCP 56(d). Because the motion for partial summary judgment was limited to Count IV of the complaint, and because there is at this time a dearth of information as to what else is in dispute and what is agreed, it will only be possible to state what facts are not in good faith controverted with respect to Count IV.

With respect to Count IV the court, on the basis of the parties' submissions on the motion for partial summary judgment, finds that there is no substantial controversy with respect to the following facts: (1) the portion of the Policy and Procedure Manual denominated I.C.7. was disseminated to plaintiff by defendant; (2) the other portions of the Policy and Procedure Manual were not disseminated to plaintiff by defendant; (3) specifically, the disclaimer was not disseminated to plaintiff by defendant; and (4) I.C.7. constituted a contract between plaintiff and defendant.

Because the existence of the contract is not in dispute, evidence the purpose of which is to establish the formation or existence of that contract will not be admissible at trial. Because the terms of the contract are set forth in I.C.7., evidence of the terms of the contract will not be admissible except that I.C.7. itself will be admissible and evidence as to the meaning of the provisions of I.C.7. may be admissible if the evidence is not otherwise inadmissible on grounds other than relevance. The jury will not be given instructions on contract formation.

ORDERED: Defendant's motion for partial summary judgment and to strike plaintiff's jury demand is denied.

The following facts exist without substantial controversy: (1) the portion of the Policy and Procedure Manual denominated I.C.7. was disseminated to plaintiff by defendant; (2) the other portions of the Policy and Procedure Manual were not disseminated to plaintiff by defendant; (3) specifically, the disclaimer was not disseminated to plaintiff by defendant; and (4) I.C.7. constituted a contract between plaintiff and

defendant. Upon the trial of this action, these facts will be deemed established. FRCP 56(d).

Because the existence of the contract is not in dispute, evidence offered for the purpose of establishing the formation or existence of that contract will not be admissible at trial. Because the terms of the contract are set forth in I.C.7., evidence offered for the purpose of establishing the terms of the contract will not be admissible except that I.C.7. itself will be admissible and evidence as to the meaning of the provisions of I.C.7. may be admissible if the evidence is not otherwise inadmissible on grounds other than relevance. The jury will not be given instructions on contract formation.