In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3051

AKEEM DANIELS, CAMERON STINGILY, and NICHOLAS STONER,

*Plaintiffs-Appellants,*

*v.*

FANDUEL, INC., and DRAFTKINGS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-01230-TWP-DML — **Tanya Walton Pratt**, *Judge.*

ARGUED FEBRUARY 22, 2018 — DECIDED MARCH 7, 2018

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* FanDuel and DraftKings conduct online fantasy-sports games. A participant pays an entry fee and selects a roster, subject to a budget cap that prevents every entrant from picking only the best players. Results from real sports contests determine how each entrant's squads did—so, for example, a touchdown on the field yields points for the fantasy teams that include the

player. The participants whose fantasy squads do best win cash.

Plaintiffs in this suit under Indiana law are former college football players whose names, pictures, and on-field statistics have been used by FanDuel and DraftKings without their permission. They contend that Indiana's right-of-publicity statute, Ind. Code §32-36-1-8, gives them control over the commercial use of their names and data. But the district court dismissed the complaint, relying on two exemptions:

> The use of a personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gestures, or mannerisms in … [m]aterial that has political or newsworthy value. [Ind. Code §32-36-1-1(c)(1)(B).]

> The use of a personality's [name, voice, etc.] … in connection with the broadcast or reporting of an event or a topic of general or public interest. [Ind. Code §32-36-1-1(c)(3).]

The judge ruled that on-field sports performances and statistics are "newsworthy" and of "general or public interest", which means that FanDuel and DraftKings may use plaintiffs' names not only in fantasy games but also in advertising. 2017 U.S. Dist. LEXIS 162563 (S.D. Ind. Sept. 29, 2017).

Plaintiffs maintain in this court that the district judge misunderstood the scope of these exemptions—indeed, erred even in asking what the exemptions mean. According to plaintiffs, FanDuel and DraftKings are illegal gambling enterprises to which none of the statutory exemptions applies. Defendants reply that their operations are lawful and that at all events none of the language in the right-of-publicity statute makes anything turn on a question extrinsic to the right-of-publicity law itself.

The district court's opinion analyzes with care the question whether plaintiffs' names and statistics are "newsworthy" and of "general or public interest". No one doubts that television can show college football games and discuss plaintiffs' performances without their consent. But the statute asks not whether a given name or performance is "newsworthy" or of "public interest" but whether the name and other details appear "*in … [m]aterial* that has … newsworthy value" or "in connection with the … *reporting* of an event … of general or public interest" (emphasis added). Plaintiffs' names and details on FanDuel and DraftKings are not necessarily "in" newsworthy "material" or a form of "reporting".

Because plaintiffs' claim arises under state law, we turned to Indiana's judiciary to see what weight the state gives to the words we italicized above, whether Indiana views paid fantasy sports as unlawful gambling, and whether it treats illegality as material to the right-of-publicity statute. We found—nothing. As far as we can see, none of the language in either §32-36-1-1 or §32-36-1-8 has ever been interpreted by any state judge.

The parties tell us that we need not worry about this deficit, because Indiana's law is similar to right-of-publicity statutes in other states. So we looked around and found—a lot of federal decisions. Plaintiffs observe that producers of video games such as *Madden NFL* have been required to obtain the consent of the players whose names, pictures, and statistics are used in those games, and they contend that the same should hold for online fantasy-sports games. But the decision about *Madden NFL* concerns California's statute about strategic litigation rather than Indiana's right-of-

publicity statute, and it was rendered by a federal court. *Davis v. Electronic Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015). A related decision, *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 724 F.3d 1268 (9th Cir. 2013), discusses California's strategic-litigation law and the First Amendment as defenses to right-of-publicity claims but does not interpret any particular state's right-of-publicity statute—not even Indiana's, though the NCAA is based in Indianapolis. Then there is *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986), which holds that federal copyright law preempts some right-of-publicity claims under Illinois law. On the way to that conclusion, we stated that marketing a game based on a player's statistics transgresses a non-preempted common-law right of publicity. *Id.* at 676 n.24. For that we relied on decisions of the Second Circuit, the Third Circuit, the Eighth Circuit, and a district judge in Minnesota. None of these decisions reflects any state judge's effort to interpret a statute similar to Indiana's. We don't say that *all* right-of-publicity cases about sports have been decided by federal judges, but decisions by state judges are rare—see, e.g., *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001)—and none involves Indiana's law or a statute materially identical to Indiana's.

A federal court's task under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), and the Rules of Decision Act, 28 U.S.C. §1652, is to interpret Indiana law as the Supreme Court of Indiana would. The absence of precedent from Indiana and the dearth of precedent from other states make this difficult. When state law is easy to parse, certification is unnecessary even when state judges have not considered a question. But we do not think that the exemptions in Ind. Code §32-36-1-1 can be understood without knowing what the state's judici-

ary makes of phrases such as "*in … [m]aterial* that has … newsworthy value" or "in connection with the … *reporting* of an event … of general or public interest" (emphasis added), which leave their meaning ambiguous.

We therefore certify this question to the Supreme Court of Indiana, under Indiana Rule of Appellate Procedure 64:

> Whether online fantasy-sports operators that condition entry on payment, and distribute cash prizes, need the consent of players whose names, pictures, and statistics are used in the contests, in advertising the contests, or both.

We have phrased this question in general terms so that the Supreme Court of Indiana may consider any matters it deems relevant—not only the statutory text but also, for example, plaintiffs' arguments about the legality of defendants' fantasy games and the possibility that there is an extra-textual illegal-activity exception to the provisions of Ind. Code §32-36-1-1. The state judiciary should feel free to re-phrase the question if it deems that step appropriate.

We appreciate the possibility that the answer to the question we have framed may not end this case. Defendants say that the Constitution supersedes any right of publicity that Indiana may recognize. It would be inappropriate for us to decide that question, however, without knowing exactly what it is that state law provides. Otherwise we are at risk of issuing an advisory opinion.

The Clerk of the Seventh Circuit will transmit to the Supreme Court of Indiana copies of the appellate briefs and record in this case.