In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1855

DARYL SUTULA-JOHNSON,

*Plaintiff-Appellant,*

*v.*

OFFICE DEPOT, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CV-2378 — **Sharon Johnson Coleman**, *Judge.*

ARGUED NOVEMBER 7, 2017 — DECIDED JUNE 25, 2018

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Daryl Sutula-Johnson sued her former employer, alleging that its changes to her compensation for selling office furniture breached its contract with her and violated the Illinois Wage Payment and Collection Act. The district court granted summary judgment for the employer. We affirm summary judgment for the employer on

the claims for breach of contract but reverse as to the statutory claims.

I.  *Factual & Procedural Background*

We start by summarizing the changes in Sutula-Johnson's compensation and then the procedural course of this lawsuit. Because we are reviewing a grant of summary judgment for the defendant-employer, we consider facts that are undisputed and give the plaintiff the benefit of conflicts in the evidence.

A.  *The OfficeMax Plan*

Plaintiff Sutula-Johnson began selling office furniture more than a decade ago. She started with Boise Cascade, which then merged with OfficeMax. In 2010, OfficeMax adopted a written compensation plan that covered its furniture sales group, including Sutula-Johnson. Under that plan, OfficeMax paid furniture account executives, including plaintiff, entirely in commissions. OfficeMax paid commissions at a rate of either 27% or 20% of each sale, depending on the sale's profit. The general policy was that commissions were earned either when a customer paid or 90 days after the customer was invoiced, whichever came first. Sutula-Johnson, however, had negotiated better terms for herself. She earned commissions upon invoicing.

OfficeMax paid commissions on a monthly basis in the second or third paycheck of the month after the commission was earned. Sutula-Johnson received commissions according to these terms throughout her employment with OfficeMax.

B. *The New Office Depot Plan*

OfficeMax and Office Depot merged in November 2013 and continued business under the name Office Depot. At first, Office Depot continued to pay Sutula-Johnson and her Office-Max colleagues under the terms of the old OfficeMax plan. Then on July 14, 2014, Office Depot announced that it was adopting a new compensation plan that would apply to all furniture account executives effective immediately.

Office Depot did not roll out the new plan smoothly. The July 14 announcement contained a PowerPoint presentation explaining the new compensation structure. Within a week, Sutula-Johnson received a copy of the PowerPoint presentation but not a copy of the plan itself. Sutula-Johnson—who kept notes of the roll-out and her talks with Office Depot managers—asserts that employees received an email a month and a half later saying that the new plan was available for viewing online. In reality, she testified, the plan was not available at that time. Sutula-Johnson did not receive a copy of the new plan until September 26, 2014, and her notes said that the plan was not yet accessible nationwide.

The new plan significantly changed how Sutula-Johnson was paid and reduced her total pay. For the first time, Sutula-Johnson received a combination of salary and what Office Depot called "incentive payments." The incentive payments were paid quarterly and with lower rates than the OfficeMax commissions: 13.5% or 10% instead of 27% or 20%. Office Depot set a quarterly sales target for each employee and paid 13.5% or 10% of all sales as "incentive payments," depending on whether the employee exceeded the quarterly sales target.

The new Office Depot plan also changed when and how Sutula-Johnson earned and received her commissions. Instead of earning commissions upon customer invoicing, the plan said that she "accrued" the incentive payments upon invoicing but did not "earn" them until the day Office Depot actually paid them to her. Under the new plan, an employee who left the company lost any claim on incentive payments not yet actually paid to her. According to Office Depot, any interest the employee had in the incentive pay was not "earned or vested until payment date." According to Sutula-Johnson, Office Depot usually paid the quarterly incentive payments 45 days after the end of each calendar quarter.

C. *Sutula-Johnson's Objections*

Sutula-Johnson had earned substantial commissions under the OfficeMax plan. She quickly figured out that the new Office Depot plan would reduce her pay significantly. She immediately objected to the new plan. She initially refused to sign it and complained to management about what was, in her view, an unfair pay reduction, especially as applied to sales already in the works but not yet invoiced. Office Depot management said the new plan would still apply to her.

Despite her objections, Sutula-Johnson continued working for Office Depot for more than another year. In early 2015, Office Depot issued a new written version of the plan with the same key terms and insisted that Sutula-Johnson sign it. She signed a form acknowledging the plan in March 2015. Later that month she filed this suit while still working for Office Depot. She resigned in December 2015.

D. *Procedural Background*

Sutula-Johnson sued Office Depot in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Her complaint alleged breach of contract, unjust enrichment, and violations of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq. (the "Illinois Wage Act"). She claimed that Office Depot breached its contract with her by paying her under the new compensation plan before March 2, 2015, when she signed the acknowledgment form. She also asserted that the "incentive payments" were commissions under the Illinois Wage Act and that Office Depot violated the Act by paying the commissions quarterly rather than monthly. On appeal she has dropped her claim for unjust enrichment.

After resigning, Sutula-Johnson amended her complaint to add claims that Office Depot had breached her contract and violated the Illinois Wage Act when it refused to pay her incentive payments on all sales that were invoiced before she left. Both parties moved for summary judgment. The district court denied Sutula-Johnson's motion for summary judgment and granted Office Depot's on all counts. *Sutula-Johnson v. Office Depot, Inc.*, 2017 WL 1333141 (N.D. Ill. April 11, 2017).

II. *Analysis*

We review *de novo* the district court's grant of summary judgment, while construing all facts and drawing all reasonable inferences in favor of Sutula-Johnson. *Roberts v. Columbia College Chicago*, 821 F.3d 855, 861 (7th Cir. 2016). Illinois law governs all claims. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), our role is to decide questions of state law as we predict the Illinois Supreme Court would decide them.

E.g., *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

## A. *Breach of Contract*

In her claim for breach of contract, Sutula-Johnson contends that Office Depot did not effectively amend its employment contract with her until she signed a written acknowledgment form on March 2, 2015. She makes two arguments to support her claim: (1) that before that date, any amendment to her contract was without consideration; and (2) that she did not accept the new terms until she signed them. In her view, a new contract was not formed until March 2, 2015, and Office Depot breached her previous contract by failing to comply with the old OfficeMax plan through that date. In the alternative, she argues that Office Depot breached her contract by retroactively reducing her commissions. We reject these arguments and affirm summary judgment for Office Depot on the claims for breach of contract.

### 1. *Consideration*

Sutula-Johnson is correct that in Illinois an employer's policy can create contractual rights that the employer cannot amend unilaterally without consideration. *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1142 (Ill. 1999). If a binding policy exists, consideration "is not supplied simply by the employee's continued work." *Id.* at 1145. The threshold question, though, is whether there was a binding contractual term to start with.

In Illinois, an employer's policy creates contractual rights only when: (1) it contains "a promise clear enough that an employee would reasonably believe that an offer has been made;" (2) the employer disseminates the policy "to the em-

ployee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer;" and (3) the employee accepts "the offer by commencing or continuing to work after learning of the policy." *Duldulao v. St. Mary of Nazareth Hospital Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987); see also *Moore v. Illinois Bell Telephone Co.*, 508 N.E.2d 519, 520–21 (Ill. App. 1987) (applying *Duldulao* to compensation plan). The Office-Max plan stated expressly that it was not a contract, so Sutula-Johnson cannot meet the first requirement.

When an employer's policy states expressly that it does not create contractual rights, there simply is no promise that an employee can reasonably interpret as an offer to be bound. *Hanna v. Marshall Field & Co.*, 665 N.E.2d 343, 348 (Ill. App. 1996); *Hogge v. Champion Laboratories, Inc.*, 546 N.E.2d 1025, 1031 (Ill. App. 1989); *Moore*, 508 N.E.2d at 521. The OfficeMax plan said that it was "not and should not be thought of as a contract of employment other than at-will" and that Office-Max "in its sole discretion" could "amend or terminate the plan at any time for any reason without notice." Given this language, Sutula-Johnson could not reasonably have treated the OfficeMax plan as having created binding, prospective contractual rights that could not be changed without new consideration. See *Moore*, 508 N.E.2d at 521; see also *Geary v. Telular Corp.*, 793 N.E.2d 128, 131, 133 (Ill. App. 2003) (employer could unilaterally change non-binding compensation plan for at-will employee).

### 2. *Mutual Assent*

Next, Sutula-Johnson argues that the new compensation plan could not apply to her until she agreed to its terms. Even employment at will is a contractual relationship, after all, and

it requires manifestations of mutual assent. See *Walker v. Abbott Laboratories*, 340 F.3d 471, 477 (7th Cir. 2003) ("Illinois courts generally treat at-will employment relationships as contractual in nature."). Compensation is of course a key term in contracts for at-will employment. See *Blount v. Stroud*, 915 N.E.2d 925, 937 (Ill. App. 2009). Therefore, even though Office Depot could change Sutula-Johnson's compensation plan without consideration, she needed to give express assent to the new plan before it took effect. See *Duldulao*, 505 N.E.2d at 318 (employee must accept offer before it is binding); *Geary*, 793 N.E.2d at 133 (at-will employee had accepted change in compensation terms).

The problem for Sutula-Johnson is that the law deems her to have accepted the Office Depot plan when she continued to work after Office Depot told her about the new plan and began paying her under its terms. An at-will employee can accept an offer from an employer by starting or continuing to work. *Duldulao*, 505 N.E.2d at 318. Sutula-Johnson points out that although she continued working after Office Depot adopted the plan, she objected orally and refused to sign the written policy until March 2015.[1] In the face of her continued work for Office Depot, however, neither the oral objection nor

---

[1] Sutula-Johnson also argues that the 2014 version did not apply to her because it said that the incentive payments applied only to "new business," while her business was with existing clients. Sutula-Johnson does not direct us to a version of the plan that contains the "new business" language. The version we see in the record refers to paying a "New Account Incentive" on "all new and reactivated accounts," which does not support her position. Even if plaintiff had identified a copy that said incentives applied only to new business, this would limit which sales were covered by the new incentive payments, not which employees were covered.

the refusal to sign was enough to reject the new compensation plan.

At summary judgment, Office Depot asserted the following as undisputed material facts: on July 14, 2014, Sutula-Johnson received a PowerPoint presentation explaining the new compensation policy; she knew that Office Depot planned to apply it to her starting that day; she received compensation according to the new plan starting that day; and, knowing all that, she continued working for Office Depot. Sutula-Johnson objected to these asserted facts on the ground that they were argumentative, inaccurate, or irrelevant. She did not, however, cite any contradictory evidence or explain how Office Depot's summary was inaccurate. Sutula-Johnson has not raised a genuine issue of material fact on these points. Also, in her Local Rule 56.1 statement supporting her own motion for summary judgment, Sutula-Johnson asserted as undisputed that Office Depot announced the new payment plan on July 14, 2014 and that from "that day onward," Office Depot had "paid commissions to Plaintiff on the reduced commission basis it announced."

Given these facts—at least in the absence of an earlier, contractually binding policy—Sutula-Johnson accepted Office Depot's new terms by continuing to work. See *Geary*, 793 N.E.2d at 130, 133 (at-will employee accepted change to his compensation plan by continuing to work after orally objecting to change). Office Depot did not breach any binding contractual obligations when it began paying Sutula-Johnson under the new plan.

Sutula-Johnson relies on *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359 (7th Cir. 1994). In that case under Illinois law, we concluded that the employer could not

unilaterally modify an employees' contract without the employees' assent, and that acceptance and consideration could not be inferred from the employees' continued work. *Id.* at 364. Critical facts distinguish that case. In *Robinson*, the employer's policy manual did not contain disclaimers denying it was making binding promises that could not be changed. The "employee would thus reasonably believe that she could not be terminated without certain protections." *Id.* at 363. This case is different. As noted above, the OfficeMax plan disclaimed any promises, so Sutula-Johnson could not reasonably rely on the OfficeMax plan as creating binding terms that the employer could not change unilaterally as a condition of continued employment.

### 3. *Retroactive Application*

Sutula-Johnson also argues that Office Depot breached her contract by retroactively reducing her commissions by applying the plan she signed in March 2015 to sales that occurred in 2014. The earlier OfficeMax plan had said that Sutula-Johnson earned commissions when invoices were sent to her customers. Sutula-Johnson testified that Office Depot paid her commissions at the OfficeMax rates on all sales invoiced through July 14, 2014, when Office Depot announced the new payment plan. To the extent Sutula-Johnson wanted the higher OfficeMax commission rates on all sales that were in the pipeline but not yet invoiced on July 14, neither plan entitled her to that result as a matter of contract law. Accordingly, Office Depot did not breach plaintiff's contract or retroactively reduce commissions that she had earned before July 14, 2014.

B.  *The Illinois Wage Act*

The result is different under the Illinois Wage Act, 820 Ill. Comp. Stat. 115/1 et seq. Sutula-Johnson asserts two types of violations of the Act: first that the incentive payments were "commissions" for which the Act required monthly, not quarterly, payment; and second that the Act entitles her to commissions that were invoiced before she resigned in December 2015, which Office Depot has refused to pay.

Under the Illinois Wage Act, the critical question turns out to be whether the incentive payments should be deemed "commissions" or "bonuses" for purposes of the Act. The Act imposes stricter requirements for payment of commissions than for bonuses, but the statute and the accompanying regulations do not draw a sharp line distinguishing the two types of payments. Also, the parties have not cited, and we have not found, controlling or even strongly persuasive guidance in Illinois case law. Doing our best to make an *Erie Railroad* prediction, and considering the ordinary meanings of the terms as applied by courts in Illinois and elsewhere, we predict that the Illinois Supreme Court would treat Office Depot's "incentive payments" as commissions under the Illinois Wage Act.

1.  *Commissions v. Bonuses*

We begin with the statutory language. The Illinois Wage Act requires every employer, "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 Ill. Comp. Stat. 115/3. "Wages" are defined broadly as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 Ill.

Comp. Stat. 115/2. "Commissions" fall within that broad definition of wages, but the Act provides that they "may be paid once a month." 820 Ill. Comp. Stat. 115/3. The Act does not address how frequently bonuses must be paid. Its single reference to bonuses requires employers to pay "separated employees" all "final compensation," which includes "earned bonuses" and "earned commissions." 820 Ill. Comp. Stat. 115/2 (defining "final compensation"); 115/5 (entitling "separated employees" to "final compensation"). The Act itself does not define commissions or bonuses any more specifically, but the different language implies different meanings. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 30 N.E.3d 288, 296 (Ill. 2015) (reasoning that "settled rules of statutory construction" require court to assume legislature intends different meanings when it uses different language).

The Act authorizes the Illinois Director of Labor to promulgate regulations to administer and enforce the act. 820 Ill. Comp. Stat. 115/12. Under the regulations, commissions are defined as "compensation for services performed pursuant to an employment contract or agreement between the two parties." Ill. Admin. Code tit. 56, § 300.510. Bonuses are "compensation given in addition to the required compensation for services performed." § 300.500. The regulation explains that the Act applies only to "earned" bonuses, not discretionary and gratuitous bonuses. *Id*. A gratuitous bonus "does not obligate the employee to do or forgo something in return for the bonus and the employee has no right to make a demand for the bonus." § 300.500(c). A bonus is discretionary "when the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon [sic] a positive evaluation of the 'employee's performance' and not when the earning of

a bonus is based on objective factors such as length of service, attendance or sign-on or relocation incentives." § 300.500(d). The regulation provides further:

> An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met. Unless one of the conditions for the bonus is that the employee be on the payroll at the time of the bonus payout, the bonus is due and owing to the employee at the time of separation.

§ 300.500(a).

The incentive payments at issue in this case could arguably fit within both definitions. The payments are certainly "compensation for services performed"—selling office furniture—"pursuant to" the compensation plan and therefore could easily be deemed commissions. See § 300.510. But they are also paid on top of the base salary, and so might be deemed "compensation given in addition to" some other required compensation and might thus be deemed earned bonuses. See § 300.500. And they are "based on" the value of the employee's sales and whether she is still employed on a certain date, both of which are "objective factors" that could trigger an earned bonus. See § 300.500(d). We must look further for clues about how Illinois distinguishes between these two types of incentive pay.

Neither party identifies an Illinois case that distinguishes between commissions and bonuses under the Wage Act. Office Depot's main argument is that the incentive payments are tied to an employee's individual performance and are therefore consistent with the descriptions of bonuses found in *Birkholz v. Corptax, LLC*, No. 1-11-0553, 2011 WL 10088322 (Ill. App. Nov., 8, 2011), and *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065 (Ill. App. 2009). In both cases, the plaintiffs were fired mid-year and sought a pro-rata share of their annual bonuses as "earned bonuses" under the act. See 820 Ill. Comp. Stat. 115/2, 115/5. The question in both cases was whether the bonuses were discretionary or "earned bonuses" capable of calculation on a pro-rata basis. In *Birkholz*, the court reasoned that bonuses "characterized as 'earned bonuses' are typically based solely on individual production or individual performance." *Id.* at *3. That is true as far as it goes, but the same is true for commissions. The court concluded that the bonuses were discretionary and "equivocal," and therefore not governed by the Wage Act, because the bonuses were based on the overall performance of the whole company over the whole year, and not solely the individual performance of the employee. *Id.* at *3–4. *McLaughlin* involved the same question. 917 N.E.2d at 1069. These two cases help distinguish between earned and discretionary bonuses, but they do not address the line between commissions and earned bonuses.

Office Depot also relies on *Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 627–28 (7th Cir. 2002), in which this court interpreted an ERISA employee benefit plan that distinguished among salary, commissions, and bonuses. Office Depot points out that *Perugini-Christen* found the payments in question were bonuses partly because the employment agree-

ment referred to them as bonuses. *Id.* at 628. Office Depot encourages us to extend that reasoning here and decide that because Office Depot did not refer to the payments as commissions, they must be bonuses. But the Office Depot compensation plan uses the term "incentive payments," not bonuses, and both commissions and bonuses are forms of incentive pay. Plus, *Perugini-Christen* reasoned that the payments were "unlike ordinary commissions because although they" were "calculated as a percentage," they were "not based on Perugini's personal sales, but rather on the sales of the branch as a whole." *Id.* And as we detail below, Office Depot has referred to the payments as "commissions" in communications with its employees. *Perugini-Christen* does not help Office Depot here.

Sutula-Johnson relies on *Harlan v. Sweet*, 564 N.E.2d 1192 (Ill. 1990). That case dealt with the meaning of the word "salary" in a provision of the Illinois Constitution. Sutula-Johnson points to a passing statement: "'commission' is the term used to describe the payment that some salespeople receive." *Id.* at 1194. That comment does not offer much insight for our purposes. She also relies on a case from this court interpreting an ERISA plan. We reasoned that "'commissions' are the paradigmatic form of incentive compensation for salespersons and, applying the plain and ordinary meaning of words, 'commissions' would necessarily be included in 'incentive compensation.'" *Bock v. Computer Associates Int'l, Inc.*, 257 F.3d 700, 706 (7th Cir. 2001) (emphasis omitted). That is certainly true, but bonuses can also be a form of incentive compensation. *Bock* does not help us distinguish between commissions and bonuses for purposes of the Illinois Wage Act.

In the absence of Illinois cases drawing a line between commissions and bonuses under the Wage Act or in any other context, our job under *Erie Railroad* remains to predict what the Illinois Supreme Court would do. E.g., *Daniels v. FanDuel, Inc.*, 884 F.3d 672, 674 (7th Cir. 2018). We turn to the general rules of statutory interpretation in Illinois, where the "fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 898 (Ill. 2005) (interpreting the Wage Act). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.*

Do the terms "commission" and "bonus" have ordinary meanings that might help us? We conclude that the incentive payments in this case are better understood within the ordinary meaning of "commissions" than of "bonuses." Most important, the payments are compensation for making a sale and are paid out as a set percentage of each transaction's value. That is the essence of a commission. *Commission*, Webster's Third New International Dictionary (1993) ("a fee paid to an agent or employee for transacting a piece of business or performing a service . . . *esp* : a percentage of the money received in a sale or other transaction paid to the agent responsible for the business"); *Commission*, Black's Law Dictionary (10th ed. 2014) ("fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received"). Those meanings are at least consistent with the Illinois Supreme Court's comment in *Harlan* that "'commission' is the term used to describe the payment that some salespeople receive." 564 N.E.2d at 1194; see also *Suominen v. Goodman Industrial Equities Mgmt. Grp., LLC*, 941 N.E.2d 694, 705 (Mass. App. 2011) ("The term 'commission' is commonly understood

to refer to compensation owed to those in the business of selling goods, services, or real estate, set typically as a percentage of the sales price."); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987) ("The most common type of commission in this country is the sales commission . . . ."); *American National Ins. Co. v. Keitel*, 186 S.W.2d 447, 449 (Mo. 1945) ("The word 'commission,' when used to denote compensation for work performed, as is ordinarily understood, means compensation paid upon results achieved. It especially applies to agents selling their masters' wares on a percentage basis.").

Taken together, the key features of the Office Depot incentive payments persuade us that they are better understood as commissions than as bonuses. The Office Depot payments were mandatory rather than discretionary. They were paid according to a set formula. They were based on the value of the individual employee's sales rather than on company- or department-wide performance. The record also indicates that the incentive payments were a significant portion of the Office Depot's employees' pay—more than two-thirds of Sutula-Johnson's compensation, according to her deposition testimony—which makes them seem more like "compensation for services performed" than "compensation given in addition to the required compensation for services performed." Ill. Admin. Code, tit. 56, §§ 300.500, 300.510. Finally, Office Depot paid a monthly draw against future incentive payments. We are not familiar with the notion of a "draw against a future bonus." These are all hallmarks of commissions, not bonuses.

Office Depot argues further that the incentive payments were no longer intended to be the primary source of employee compensation, and that they were intended to be "behavior-

motivating." Neither of these facts makes these "incentive payments" more like bonuses than commissions. It is common for sales representatives to receive base salaries plus a percentage of their sales as commissions. See, e.g., *McInnis v. OAG Motorcycle Ventures, Inc.*, 35 N.E.3d 1076, 1078 (Ill. App. 2015) (motorcycle salesman paid "base salary . . . plus sales commission"); *Pistakee Marina, Inc. v. Illinois Workers' Compensation Comm'n*, No. 2-14-0516WC, 2015 WL 5673061 at *2 (Ill. App. Sept. 25, 2015) (marina worker paid base salary plus 4% commission on all sales); *Blount*, 915 N.E.2d at 933 (employee of broadcasting company paid base salary plus commission based on air-time sold). And as noted, bonuses and commissions are both forms of incentive pay designed to motivate behavior the employer values. See *Bock*, 257 F.3d at 706 (reasoning that commissions "are the paradigmatic form of incentive compensation for salespersons").

Office Depot also implies that the incentive payments cannot be commissions because they are tied to annual sales targets that Office Depot calculates on a quarterly basis. But the payments remain compensation for services performed under the plan, calculated as a set percentage of the value of sales that employees make on Office Depot's behalf. Those are commissions, and the Illinois legislature has chosen to require that commissions be paid monthly. We need to respect that choice, and we see no basis in Illinois case law for predicting that tying commissions to individual sales targets transforms them into bonuses.

Although we do not believe an employer's label can transform a commission into a bonus, Office Depot's own language undermines its efforts in this lawsuit to portray the incentive

payments as bonuses. The PowerPoint that Office Depot circulated to explain the compensation change said it was a "Commission based plan paid on sales rep margin dollars back to dollar one." On two additional slides, the PowerPoint said that the "Commission Rates" varied based on quarterly sales targets. In other words, when Office Depot needed to explain the new compensation plan in plain terms to its employees, it called the payments "commissions." Regardless of the term Office Depot used in the plan, in practice these payments are compensation paid to salespersons as a set percentage of the value of each transaction. For purposes of the Illinois Wage Act, these payments are better understood as commissions than as bonuses.

Finally, we respectfully disagree with the district court's view that the compensation plan should be interpreted so as to deem it to comply with the law. This interpretive tool might be useful in other contexts, such as when a court must decide how an ambiguous contract should be applied, but the terms of the Office Depot have not been shown to be ambiguous as applied to Sutula-Johnson. The district court's interpretive rule is not useful in deciding whether undisputed facts did or did not violate the law. Office Depot should not benefit from the ambiguity that it, as drafter, created by using the term "incentive payment." When the issue is whether an employment contract or policy violates employees' statutory rights, we see no reason to predict that Illinois law would give the employer the benefit of the doubt.

## 2. *Illinois Wage Act Violations*

Given our prediction of Illinois law, Office Depot was not entitled to summary judgment on Sutula-Johnson's statutory claims. She alleges two types of violations: (1) failure to pay

her commissions on a monthly basis; and (2) failure to pay her commissions on sales invoiced before she resigned in December 2015. Taking the facts asserted by Office Depot at summary judgment, we predict that Illinois would find that Office Depot violated the Illinois Wage Act. Summary judgment for Office Depot was inappropriate.

Whether Office Depot complied with the Act depends on when the commissions were "earned." The Office Depot plan said that commissions were not earned until the day they were paid, once every quarter. We agree with Sutula-Johnson that Office Depot's plan set an invalid condition for its employees to "earn" their commissions. The Illinois Wage Act requires employers "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 Ill. Comp. Stat. 115/3. Commissions can be paid on a monthly basis, *id.*, but that is framed as an exception to the semi-monthly requirement. The Act thus means that commissions must be paid at least monthly.

Can an employer satisfy this requirement by simply declaring that wages are not earned until the day they are paid? Of course not. Otherwise, an employer could say that employees accrue wages at a rate of $10 for every hour worked, but they do not earn the wages until they are paid on the last day of the month. This would nullify the Illinois Wage Act's requirement that employees be paid on a timely (usually semi-monthly) basis. See *Watts v. ADDO Management, L.L.C.*, 97 N.E.3d 75, 79 (Ill. App. 2018) ("The purpose of the Wage Act is to provide Illinois employees with a cause of action for the timely and complete payment of earned wages or final compensation."); *Andrews v. Kowa Printing*, 814 N.E.2d 198, 205 (Ill. App. 2004) (same). The regulations entitle a "separated

employee" to "an earned commission when the conditions regarding entitlement to the commission have been satisfied, notwithstanding the fact that, due to the employee's separation from employment, the sale or other transaction was consummated by the principal personally or through another agent." Ill. Admin. Code, tit. 56, § 300.510(a). An employer can set the requirements for earning a wage or commission, but it cannot undermine the monthly payment requirement by imposing an arbitrary date on which wages are earned, completely unrelated to the employee's duties.[2] Under Office Depot's quarterly payment scheme, employees might not "earn" a commission on a sale until over three months after they completed all work on it. This delay (and the effective forfeiture of earned commissions upon resignation) violated the Illinois Wage Act.

Office Depot insists that even if commissions were earned upon invoicing, it complied with the Illinois Wage Act's requirement for timely payment. It argues that even though it did not pay commissions in full until months later, it paid employees a semi-monthly salary and a $250 monthly draw against future commissions (or "incentive payments"). Neither fact satisfies Office Depot's obligation under the Illinois Wage Act to pay all commissions earned each month by the end of the next month. A small monthly draw does not meet

---

[2] The summary judgment record suggests that Office Depot considered the commissions "accrued" upon customer invoicing, and would calculate the commission that the employee was due on the sale. Sutula-Johnson's direct supervisor testified that she would be paid a commission on the invoiced amount, regardless of whether the customer actually paid the full invoice value. Office Depot has not identified any conditions Sutula-Johnson needed to meet after customer invoicing in order to be paid that commission, other than remaining employed on the date of payment.

the requirement that the employer pay "all wages earned" during the relevant period. See 820 Ill. Comp. Stat. 115/3. Also, the Act distinguishes between salaries and commissions and sets different rules for both. See 820 Ill. Comp. Stat. 115/2 (distinguishing between salary and commission). Office Depot could not satisfy the requirement that it pay all commissions earned during one pay period by paying only all salary earned during that period.

Thus, Office Depot was not entitled to summary judgment on Sutula-Johnson's claims under the Illinois Wage Act. She has offered evidence that Office Depot violated the Wage Act by failing to pay her commissions monthly, see 820 Ill. Comp. Stat. 115/3, and by failing to pay her all commissions earned before she resigned, see 820 Ill. Comp. Stat. 115/2, 115/5; see also Ill. Admin. Code, tit. 56 § 300.510(a).[3]

*   *   *

In conclusion, AFFIRM summary judgment for Office Depot on the claims for breach of contract but REVERSE summary judgment for Office Depot on the claims under the Illinois Wage Act and REMAND for further proceedings consistent with this opinion.

---

[3] We have also reviewed Sutula-Johnson's filings on her own motion for summary judgment, but we conclude that we cannot order judgment in her favor on this record. Her motion papers did not establish undisputed facts supported as required by citations to available evidence, so we remand for further proceedings consistent with this opinion.